(December 11, 1990)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE COUTIN, Appellant.—Judgment of the Supreme Court, New York County (Joan Carey, J.), rendered on March 26, 1985, convicting defendant, following a jury trial, of two counts of robbery in the second degree and sentencing him, as a predicate violent felon, to two concurrent indeterminate 4-to-8-year terms to run consecutive to a 2-to-4-year term that defendant was already serving, is affirmed.

Defendant herein was convicted, following a jury trial, of the gunpoint robbery of a prostitute. In that regard, there is no merit to his claim that the evidence does not support the verdict. The discovery of the victim's straw purse, as well as a gun, inside the vehicle in which defendant was riding, a short

distance from the scene of the crime and shortly after the robbery occurred, tended to corroborate the complainant's account. Moreover, credibility is ordinarily a matter for the determination of the trier of the facts *(People v Parks,* 41 NY2d 36), and there is no indication that the jury failed to properly weigh the evidence *(see, People v Bleakley,* 69 NY2d 490). The conviction of codefendant Harry Madison was affirmed by this court on February 17, 1987 (127 AD2d 1014). However, an issue not advanced in connection with Madison's appeal but which defendant does raise herein concerns the validity of his arrest and the search of the automobile. The evidence presented at the suppression hearing reveals the following:

On June 28, 1984, Police Officers Robert Vilches and Wayne Jeanes were on radio motor patrol in the Tenth Precinct in Manhattan when, at approximately 5:25 A.M., they were flagged down by two women, one of whom they recognized as Kathy Williams, a prostitute working in the area. Williams stated that her purse or pocketbook had just been stolen moments before at gunpoint by a group of people in a car, which had pulled up to the sidewalk where she was standing. She described the robbers as Puerto Ricans and asserted that there had been a lot of people in the automobile consisting of about four men and a couple of girls. Williams and her companion both claimed that the vehicle in question was an old four-door sedan, although one of them believed that it was green and the other thought that it was brown; both women agreed that the car was dark in color. According to Williams, the automobile had headed toward 28th Street and turned east. The officers thereafter turned left on 28th Street and drove east. When the police reached 10th Avenue, they looked up and down the street but did not observe any moving vehicles resembling the car described by the two women. There was, however, a dark green automobile with a large number of people in it proceeding west on 28th Street toward 9th Avenue.

The officers pulled up behind the car at the intersection of 28th Street and 9th Avenue. There were six occupants, two in the front seat and four in the back. The people in the automobile, who appeared to be Hispanic, turned around and glanced nervously at the squad car; one of the women in the back seat bounced up and down as she looked back at the police vehicle. The officers followed the green car, a 1977 four-door sedan, as it turned right on 9th Avenue, and, after it had stopped for a traffic light on 27th Street, Officer Jeanes maneuvered the

patrol car alongside the green automobile and pulled it over. Officer Jeanes noticed that there were Hispanic males inside and that one of the women in the back seat was moving as if she were placing something underneath her. The stop occurred approximately one minute after the officers' conversation with Williams. The police exited their vehicle and, with guns drawn, ordered the six people out of the car. As the man in the back seat on the left side got out, Officer Jeanes saw a white straw pocketbook in the left passenger footwell in front of where he had been sitting. Defendant was the person on the front passenger seat. After the occupants had all alighted, Officer Jeanes recovered an automatic pistol and a clip containing live rounds from the crack between the seat and the backrest. He also removed the white straw pocketbook, as well as another pocketbook. Officer Vilches returned to Williams and brought her over to the suspects' automobile.

At the conclusion of the hearing, the trial court, crediting the testimony of the two officers, found that the officers had been informed by Kathy Williams that she had been robbed at gunpoint by a number of Puerto Ricans in a large, four-door sedan, the color of which was either green or brown; they were also told that the car was old and that there were a lot of Puerto Rican people inside, some of whom were women. Additionally, the vehicle was reported to have just turned down 28th Street. The Judge also determined that after the police received the foregoing description, they headed east on 28th Street and, failing to see any moving cars on 11th or 10th Avenues or on 28th Street, they spotted a green automobile at 28th Street and 9th Avenue. When they pulled up behind the vehicle, they noticed that it was a four-door sedan, that there were two people in the front and four in the back and that they appeared to be Hispanic. The court, further, found that there were women present, that an individual in the back seat bounced up and down as the other occupants turned around to look at the police and that, after the car was pulled over and the first occupant stepped out, one officer saw a purse on the floor in front of a male passenger. Therefore, the Judge concluded, the police acted lawfully in stopping the car and detaining the occupants for further questioning. Since they had been informed that there was a gun involved, they were entitled to direct the people in the automobile to step out, and, having observed the purse on the floor, they were warranted in conducting a search for the gun that had been used in the commission of the robbery. Consequently, the defendants' motions to suppress evidence were denied.

It is established that the police may stop an automobile and frisk its occupants when they have a reasonable suspicion of criminal activity *(People v Hicks,* 68 NY2d 234). Moreover, there is no constitutional violation involved in directing persons to step out of a car which is lawfully stopped and detained in order to secure the safety of the officers, particularly where, as herein, there is a particularized reason for believing that there is a gun present *(see, People v Robinson,* 74 NY2d 773; *People v McLaurin,* 70 NY2d 779). It should, further, be emphasized that the officers in the instant situation possessed more than merely suspicion of criminal activity such as would justify a brief stop for investigative purposes. A citizen known to them stated that she had just been robbed of her handbag at gunpoint by a group of about four men and a couple of women who seemed to be Puerto Rican. The car was described by the complainant and her companion as an old four-door sedan which was either dark green or brown in color, and the vehicle was pointed out as having headed down 28th Street. It was also 5:25 in the morning, and there were few, if any, moving vehicles in the vicinity. Within moments, the police noticed a car and its occupants, all fitting the description provided by the victim and the other woman. Indeed, it was scarcely likely that on virtually deserted streets at 5:25 A.M., in the immediate area of the crime and minutes after it had been perpetrated, there would be more than one old four-door sedan, either dark green or brown, carrying a large group of Hispanic people, among whom were a couple of women.

Accordingly, the description of both the car and its occupants was precise, and the ensuing stop was close, proximately, both in time and location to the robbery. Significantly, the offense was reported by the victim herself. Finally, as the first passenger left the automobile, a pocketbook was observed in the left passenger footwell of the car, in front of where a male (rather than a woman) had been seated. Under these circumstances, there was probable cause to arrest the occupants of the vehicle and conduct a search incident to a lawful arrest. In any event, considering the existence of reasonable suspicion to support a limited search for weapons *(People v Lindsay,* 72 NY2d 843), the officers were warranted in looking for the gun even if the arrest was not deemed to have occurred until after the police retrieved the automatic pistol and the clip with its live rounds. As the Court of Appeals noted in *People v Lindsay (supra,* at 845), in upholding the search therein, the "subsequent search of the area under the

driver's seat was permissible under Federal law because the search was limited to those areas in which a weapon could have been placed or hidden and because the officers, in these circumstances, 'posses[ed] an articulable and objectively reasonable belief that the [occupants were] potentially dangerous' and might, upon reentering the car, gain immediate control of a weapon secreted in that area". Consequently, the trial court appropriately denied defendant's motion to suppress. Concur— Carro, Milonas and Ellerin, JJ.

Murphy, P. J., dissents in a memorandum as follows: I would reverse the judgment and grant the suppression motion.

At approximately 5:30 A.M. on June 28, 1984, a marked police patrol car with two officers on duty was flagged down by two women at the intersection of 29th Street and 11th Avenue in Manhattan. The complainant was known to the officers as a prostitute from that neighborhood. The complainant told the officers that she had just been robbed of her purse at gunpoint by a group a people in a car who she described as Puerto Ricans, stating that there were approximately four men and two women in the car, and that they had turned east on 28th Street just moments before. The complainant stated that the car was green, and her companion said it was brown, but they agreed it was dark in color.

The officers turned left on 28th Street and drove east to 10th Avenue, but did not see any moving cars fitting the description. They did see a green car with a large number of occupants heading west on 28th Street. The police turned and followed the car as it turned right onto 9th Avenue. The police observed some of the occupants looking back at them, and one of the women in the back seat bouncing up and down. When the green car stopped for a red light the police officers pulled alongside and detained them. One of the officers testified that a woman in the back seat was moving around as if to hide something under her.

Without any inquiry, the police officers, with guns drawn, ordered the occupants out of the car. Defendant had been sitting in the front passenger seat. When the occupants had stepped out of the car, one of the officers noticed a white straw lady's purse on the floor in front of the back seat.

One of the officers then searched the back seat area of the car, removed the white purse, and conducted a further search of the car, discovering an automatic pistol and live ammunition in the crack between the back seat and the backrest.

The suppression motion should have been granted because

the police did not have the right to search the car. Assuming that the police had the right to order the occupants out of the car in light of the report of a handgun *(People v McLaurin,* 70 NY2d 779, 782), once the occupants were out of the car, the officers had no right, without further inquiry or arrest of the occupants, to search the recesses of the automobile for a handgun. *(See, People v Torres,* 74 NY2d 224.)

Indeed, under these circumstances, approaching the car with guns drawn and, without any inquiry, summarily ordering all occupants to exit the car, without more, justifies reversal. *(See, People v Torres, supra,* at 231 [Alexander, J., concurring].)

Accordingly, the judgment of the Supreme Court, New York County, rendered on March 26, 1985, convicting defendant, after a jury trial, of two counts of armed robbery in the second degree, should be reversed, and the suppression motion granted.